Chief Justice Robertson
delivered’the opinion of the Court.
Benjamin Harrison, jr. sold to Jonathan Morton, 200 acres of land, out of a tract of 1000 *255 acres, entered on the 26th of April, 1780, and patented several years afterwards.
Morton sold and conveyed 93 acres of this 200, to Petty,-and 105 acres to Tinsley, who having sold 'to John Duncan, united with Morton and made a joint deed for it to Duncan. Petty and Duncan being, several years afterwards, evicted by Stevens, Owings and Marshalls, who sued them in ejectments, on grants of prior date to that of Harrison, recovered the estimated value of the improvements, as well those which were on their lands when they bought them, as those which were made by themselves. Petty recovered from Morton the consideration paid to him, but it does not appear that he got the legal interest upon it; whether he did or not, is left in doubt; and Duncan having obtained a judgmentagainst Tinsley, on the warranty in the joint deed, Tinsley recovered the amount of it from Morton, compounded of the consideration and interest.
After the eviction, Stevens placed Adams-and Jas, •Duncan on a part of the land, and Owings and Mar-shalls sold and conveyed the remainder, in separate parcels, to Elseberry and Ridgeway, and John Duncan, who conveyed to Elseberry the live acres which he bought.
On the 13th of April, 1816, Morton filed a bill in chancery, against Petty, John Duncan, Elseberry, Ridgeway, Stevens, T. D. Owings, (who had succeeded to the right of J. C. Owings) Adams, James Duncan and the heirs of Tinsley, charging that Harrison’s entry was superior to those of the successful claimants in the ejectments; that he (Morton) was entitled to the value of the improvements which he had sold, and for which his vendees had been paid; to rents for the occupancy of the land by them; to a release of the legal title from the successful claimants and their alienees, and a re-conveyance from Duncan and Petty, The bill prays for relief co-extensive with its allegations, and with the equity of Morton.
All the defendants except Owings and Tinsley’-s •heirs, answered, denying the equity asserted in the bill, and resisting a decree,
Period between 30th Nov. ’24, and íst. of Aprii, ’27, is excluded from computation of limitation to writs of error.
Morion having, in the meantime, died, the suit wa's revived by bill, in the names of his heirs.
The court decreed that the Marshalls, Owings, Stevens, Ridgeway, Elseberry, Duncan . and Petty-should release the legal title to the heirs of Morton. That Duncan should account to the heirs for the rents and profits during his occupancy, provided iiiey should not exceed the legal interest on the consideration, and be credited with the value of the improvements made by him, and that Ridgeway, Stevens and Elseberry should be compensated for the improvements made by them. The values of the rents and improvements having been ascertained by commissioners, the court rendered a final decree, according to the report, and the foregoing principles of the interlocutory decree.
To reverse this decree, cross writs of error are prosecuted by Morton’s heirs, and by Ridgeway, Stevens and Elseberry. The writ by Ridgeway, &c. was not issued until the 10th of February, lp29. The final decree was rendered on the 10th of October, 1823.
Morton’s heirs have plead the statute of limitations to this writ,'and the plaintiffs in the writ demurred to the plea.
By the act of 1826, (Session Acts, SO,) the period between the 30th of November, 1824, and the 1st of April, 1827, is excluded from the computation of the limitation to writs of error. Hence it appears that, on the 10th of February, 1829, three years had not expired, by one day; the 10th of February, 1829, being the last day.
Various errors are assigned by the parties respectively, Without being specially noticed, they will all be embraced by a few general principles, which wo will proceed to lay down. '
So much of the decree as establishes the entry of Harrison, is not questioned. There is no doubt that Harrison’s entry is valid, and when properly surveyed, with rectangular lines to the cardinal points, will cover the 700 acres conyeypd to Morton, The enfrj *257 been sustained to this extent, by this court-, in the coso of M’Kinney vs. Watts, et al. III. Marshall, 268, and the proof in this case is, in substance, what it ?u that.
If vendee receive pay for improvements on e-viotion, and afterwards., vendor establish his title to bo paramount, ven-dee may be compelled to refund to <>-• victor what he has received for improvement'-
If vendor, or. eviction of refímrled'co sideration &" interest, ven-sjble'fo'rrents" but must be f paid for per-* “n(l provemen™”
Duncan and Potty might have injoined the judgments against them in ejectment, and relying on their superior.equity, have obtained a decree fora perpetual injunction. But they elected' to submit to the judgments and to recover from the successful parties, the value of the improvements.
What they received they may be compelled to refund, since the title of Morton, under which limy held —when they were allowed pay for improvements, is established to be paramount in equity, and his heirs are entitled, by decree, toa restitution of the land.
As, therefore, they are liable to those who paid them for improvements, for the amount which they received, Morton’s heirs have no right to a decree against them for it, especially as they will get the improvements with the land. Nor are they bound to pay to Morton’s heirs what was received for the improvements which had been made on the land before the sale ta (hem by Morion, because the heirs will be restored to these improvements, when they shall obtain possession of the land.
As between Morton’s heirs and Duncan, equity requires that the former shall be liable for all lasting and valuable improvements, which were made since Morton’s sale, and before the recoveries in ejectment, and that Duncan shall account to them for the profits during the same time. Whatever may be the rule in a common law forum,u in foro conscicntimf Morton’s heirs are bound to pay to . Duncan, not only for ame-iiorations, but for all permanent improvements which were made by him, in good faith, to be valued at the times when they were respectively made, and are entitled to recover from him, rents, during his occupancy, to be assessed on the land and the improvements, annually, increasing the rents on tbp improve* meats, correspondently with this annua! accession of value, and diminishing it in the sa.me ratio, when they ^hall have deterioraféd.
Tietils should be regulated by znterest, on consideration money, and on value of improvements, being neither greats cr nor less than their - united ain’t.
As Duncan has recovered from Morton, interest on the price which he paid him for the land, it is equitable that he should account to his heirs for rent, as long as he had the use of the land. This is the true principle of equity, when'there is no bad faith on either side, and when the title of the vendor is the best in equity. The use of the land is considered equivalent to the use of its value; and the parties have agreed that the consideration is the value.
The rents should be regulated by the interest on the consideration and on the value of ibe improvements, being neither greater nor less than their united amount.
For example, suppose the consideration to have been $1000, the rent for the first year should be $60. If, in the mean time, improvements were made worth $500, for the next year the rent should bo $90, and so on.progressirely, graduated by the same standard, either augmenting or diminishing the rent, as the value of the improvements should be increased or diminished, if ihe rent be not increased by the improvements, Duncan should only recover their present value. Duncan should account for waste, >1 he committed any.
If Petty did not récover interest from Morton, be Is not liable for rents. And as he had the use of the ■improvements, he should recover from Morton’s heirs no more than their value, at the time when they shaij be assessed. But if he recovered interest, the same rule should be applied to him and to Duncan. Morton’s heirs are responsible to Stevens, Eiseberry and Ridgeway, for improvements which they may have ■made.since their purchases.
As between these parties, the account for their improvements and for rent, must be adjusted according to the principles of the occupant laws, as the improvements were made in good faith, under a title adverse to that of Morton.
By purchasing the land, Eiseberry, Stevens and Ridgeway also acquired a legal right to all the im..provements which were then upon it, and for -which -their vendors had paid Duncan and Petty. And, *259 therefore, they insist that Morton’s heirs shall pay them for these improvements also, before they, símil he permitted to take possession of the land;
This cannot be allowed; because, if it were tolerated, Morton’s heirs would-be subjected to a charge for these improvements, regulated by the occupant laws, and would not, be allowed to settle for them in their account with Duncan, for rents; and with Petty, according to the principles of equity-, which they have a right to do, as there is a privity between them and Duncan and Petty, and as the improvements ■ were made under their title, which is ascertained to-bé the best in equity. If Morton’s heirs were compelled to pay Elseberry, &c. for these improvements,;, great and manifest injustice might be done, to them. Elseberry, &c. have adequate remedies, on the warranties, in' their deeds, M’Kinney vs. Watts, &c. III. Marsh. 268.
But as Duncan and Petty are liable to Marshall, &c. for the amount which they received from them for-improvements, and Marshall, &e. are liable to Else-berry, &c. on their warranties, it would be equitable to decree to Elseberry, &c, what Duncan and Petty may be compelled to pay. But such a decree was; not asked for;-and if it bad been,.the proper parties-wére not before the court, so as to enable (he court to render it.
The rights of all the parties might-be adjusted in this suit, by further preparation; and it would be best' that they should be thus settled. Elseberry, might obtain a decree against Duncan aud Petty, for -what they owe to Marshall, &c, and -then a decree against Marshall, &c, for the balance, if any, to which.-, they will be entitled on the covenants of warranty; and thus the whole case, in all its ramifications, will have been disposed of, without the delay and expense-incident to several suits,,the avails of which might be unjustly affected by accidents, which, neither prudence. nor law can prevent.
But to attain this end, the Marshalls must be made parties. They were necessary parties also, so far as Morton’s heirs are concerned. The court has de~ *260 creed that they release to Morton’s heirs, ail tbe.tr right to the land. The record does not show that they ever had any notice of this suit.
Triple.lt, for Morton’s heirs j Hanson, for Ridge»*' way, and ais»
Therefore, the decree of the circuit court is reversed, and the, cause remanded, for proceedings consistent with this opinion.
The parties must, respectively, pay their own costs in this court. .